Case 1:21-cv-00159 Document 46 Filed on 03/27/23 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
March 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RUBEN FLORES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:21-CV-159 |
| | § | |
| ANTONY BLINKEN, U.S. SECRETARY OF STATE AND THE UNITED STATES OF AMERICA, | § § § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Plaintiff Ruben Flores filed this action seeking a declaratory judgment that he is a United States citizen after he was denied a U.S. passport based on a finding that he did not provide sufficient evidence to establish that he was born in the country. In March 2023, the Court held a bench trial. Based on the record and the applicable law, the Court concludes that Plaintiff has demonstrated by a preponderance of the evidence that he satisfies the statutory requirements to have acquired United States citizenship at birth.

### I.  Findings of Fact

At trial, the Court heard testimony from Aurora Tovar Vasquez (Plaintiff's mother), Manuel Flores (Plaintiff's father), and Plaintiff. Based on their testimony, the admitted exhibits, and the parties' stipulated facts, the Court reaches the following findings of fact regarding Plaintiff's birth.

Aurora Tovar Vasquez was born in July 1951 in Mexico, and grew up in Tamaulipas, where her father worked as an agricultural worker. Her parents did not register her birth, and she never attended school.

When she was a teenager, Vasquez began dating Manuel Flores, who is also a Mexican citizen. After about a year of dating, they moved into a house together in Matamoros on the property of Flores's parents.

In 1972, Vasquez became pregnant.  She intended to give birth to the child in Matamoros and began seeing a midwife for prenatal care.  She had no intention of giving birth in the United States and had never been there.

At this time, Flores's sister, Virginia Villareal, lived in Brownsville, Texas, with her husband, Guadalupe Villareal, a United States citizen.  Flores would visit them, using his border crossing card, but Vasquez never accompanied him, as she did not have a crossing card.

In March 1973, Flores heard that as part of the Charro Days festivities, the United States would permit Mexican citizens without border cards to cross into the United States at the Brownsville port of entry.  Villareal invited Flores and Vasquez to visit him, and they agreed.  Although they did not know for certain whether Vasquez would be allowed to enter the United States, they felt that the worst that could happen was her being turned away at the bridge.

On the morning of March 13, Villareal picked up Vasquez and Flores at their home in Matamoros to drive them to Brownsville.  At the bridge, a border patrol official spoke in English with Villareal.  Neither Vasquez nor Flores could understand the exchange, as they do not speak English.  The official permitted the family to enter the United States, never having asked Vasquez or Flores any questions.

Villareal drove directly to his house, and the family spent the day together.  At some point in the evening, between about 6 and 8 p.m., Vasquez began to feel discomfort and pain.  Villareal drove her and Flores to the home of Guadalupe Gonzalez, a midwife who the Villareals knew because she had delivered other relatives' children.

When Villareal, Flores, and Vasquez arrived at the midwife's house, the midwife took Vasquez into a separate room.  The men did not stay for the birth and instead left to buy diapers and other baby supplies, as the couple had not anticipated having their baby that day and had not come prepared.

Around 10 p.m., Vasquez gave birth to Plaintiff.  She stayed the night at the midwife's house, and the next day, Villareal picked her up, and then drove her, Flores, and Plaintiff back to

Matamoros. A few days later, the midwife registered Plaintiff's birth in Texas, recording his birth date as March 13, 1973, and his birthplace as Brownsville, Texas. (Tex. Birth Cert. (PX1), Doc. 45, 3) In 1975, the couple baptized Plaintiff at a church in Matamoros, recording his birth date as March 13, 1973, and his place of birth as Brownsville, Texas. (Baptismal Cert. (PX6), Doc. 45, 25–26) The couple never registered Plaintiff's birth in Mexico.

Shortly after giving birth to Plaintiff, Vasquez became pregnant again. On November 20, about eight months after Plaintiff's birth, Vasquez went into labor while at home in Matamoros. She gave birth that day in her home to Claudia Flores Tovar, receiving assistance from a midwife named Catalina, who lived in their neighborhood. Claudia was premature and small, so Flores's parents took her to the hospital. About a year later, Vasquez and Flores registered Claudia's birth in Mexico. (Claudia's Registration (PX10-1), Doc. 45, 38–39)

In 1975 and 1976, Vasquez and Flores had two additional children. Vasquez gave birth to both children at her home in Matamoros, with the assistance of the midwife, Catalina. In August 1976, Vasquez and Flores registered these births in Mexico. (Maria De Lourdes's Registration (PX10-2), Doc. 45, 40–41; Virginia's Registration (PX10-3), Doc. 45, 42–43)

Around this time, Flores applied for an immigrant visa with resident status based on Plaintiff's birth in the United States. He desired the visa to facilitate seeking work in the United States. At some point, Flores received a request that he appear for an interview at the United States Consulate in Monterrey, Mexico. The request indicated that Vasquez should accompany Flores, although the couple did not know why she had to do so. Around 5:00 a.m. on the day of the interview, they left Matamoros to travel to Monterrey by bus. Once they arrived at the consulate, Flores and Vasquez waited all day in a room with many other people. They were the last ones called to meet with the consulate officials, who immediately separated the couple into different rooms.

Three officials questioned Vasquez about Plaintiff's birth, and pressured her to admit that Plaintiff had actually been born in Matamoros. Vasquez felt intimidated and unwell after the long

day, and she eventually acquiesced. An official typed up a statement in which Vasquez admitted that she had lied about Plaintiff's birth in Brownsville and that he had actually been born in Matamoros on March 21, 1972. (Statement (DX2), Doc. 44, 4–5) Vasquez does not recall giving the consulate officials the 1972 birth date and does not know why they included that date in the statement. Although Vasquez believed that the statement contained erroneous information, she signed it.

In a separate room, other officials questioned Flores. At one point, they told him that his wife had admitted that she had given birth to Plaintiff in Matamoros. The officials presented a document for Flores to sign and told him that his wife had already signed a similar statement. He refused. The officials did not give Flores or Vasquez a copy of the statement that Vasquez signed or the one presented to Flores. In 1979, the U.S. consulate confirmed that it had denied Flores's request for a visa, referencing as the grounds for the denial the statement that Vasquez previously signed. (Letter (DX11), Doc. 44-1, 24)

The family continued living in Mexico. In November 1978, Vasquez gave birth at her home to Manuel Flores Tovar, again with the assistance of the same midwife, Catalina. Six years later, they registered his birth in Mexico. (Manuel's Registration (PX10-4), Doc. 45, 44–45)

In October 1994, Vasquez gave birth to her last child, Antonio Flores Tovar. By this time, Catalina had died, and Vasquez gave birth in a hospital. In 1995, the parents registered Antonio's birth in Mexico. (Antonio's Registration (PX10-5), Doc. 45, 46–47)

Many years later, in June 2017, Plaintiff applied for a U.S. passport. A month later, he received a request for additional information. (Letter Requesting Add. Ev. (PX9), Doc. 45, 33) He provided supplemental documentation, but in February 2019, the U.S. Department of State denied his application for failure to prove that he was born in the United States. (Letter of Denial (DX9), Doc. 44-1, 17) Specifically, the agency indicated that the State of Texas had "flagged" his birth certificate "as fraudulently filed" based on a statement by the midwife who filed the

document. (*Id.*) The letter also referenced Vasquez's statement at the consulate in Monterrey claiming that Plaintiff had not been born in Texas. (*Id.*)

Plaintiff looked into the matter and learned that in 1983, the midwife who had attended his birth admitted to U.S. officials that she had filed over 100 false Texas birth certificates. (Sworn Statement of Guadalupe Gonzalez (DX3), Doc. 44, 14) She signed a sworn statement, attaching ledgers of names and marking the ones that she claimed were fraudulent. (*Id.*) One ledger identifies Plaintiff as having a fraudulent record, noting his birth date as March 13, 1973, at 10:00 p.m., and a birth weight of twelve pounds and eight ounces. (Ledger Excerpt (DX3), Doc. 44, 17) The midwife signed the statement in connection with an investigation by the Immigration and Nationalization Service. At the time, she was in her seventies and ill, and she died a year later. (Sworn Statement of Guadalupe Gonzalez (DX3), Doc. 44, 12–14) Until Plaintiff requested a U.S. passport, neither he nor his parents knew of the midwife's statement.

Plaintiff challenged the flag—i.e., an Addendum—on his birth certificate with the Texas Health and Human Services Commission. In January 2020, an Administrative Law Judge held a hearing and received evidence, including statements from Plaintiff's parents and the statement from the midwife claiming to have fraudulently filed Plaintiff's birth certificate. The ALJ found that the sworn affidavits of Plaintiff's parents describing the circumstances of his birth "provided sufficient evidence to rebut the presumption that his Texas Certificate of Birth was false." (ALJ Order (PX3), Doc. 45, 12) The ALJ ordered "the addendum [on Plaintiff's birth certificate] removed and a Texas Certificate of Birth issued." (*Id.* at 13)

In October 2021, Plaintiff filed this lawsuit.

## II. Conclusions of Law

Plaintiff brings this declaratory judgment action under 8 U.S.C. § 1503(a), which provides a mechanism for an individual within the United States to challenge the denial of a right or privilege based on the determination of his citizenship.

### A. Applicable Standards

Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014). "There are 'two sources of citizenship, and two only: birth and naturalization.'" *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006) (quoting *Miller v. Albright*, 523 U.S. 420, 423 (1998)). In the current matter, Plaintiff claims he acquired citizenship at the time of his birth by virtue of being born in the United States.

In a Section 1503(a) case, the district court holds a bench trial and weighs the evidence, determines the credibility of witnesses, and resolves conflicting testimony. FED. R. CIV. P. 52(a)(1), (6); *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). A plaintiff must prove, "by a preponderance of the evidence, that he is an American citizen by birth." *Garcia*, 557 F. App'x at 308 (citing *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958)); *see also* 22 C.F.R. § 51.40 ("The applicant has the burden of proving that he or she is a U.S. citizen . . . ."). Proving a fact by a preponderance of the evidence means showing that the existence of that fact "is more likely than not." *Matter of Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1164 (5th Cir. 1993). In essence, if the evidence demonstrates only that it is equally likely that the plaintiff was born in a foreign country as in the United States, the plaintiff has not carried his burden.

A Texas birth certificate "registered under this title that is certified by the state registrar is prima facie evidence of the facts stated in the record." TEX. HEALTH & SAFETY CODE ANN. § 191.052. But this evidence is rebuttable, "because prima facie evidence only refers to 'a minimum quantity,' and constitutes enough evidence that raises either 'a presumption of fact, or that, which is sufficient, when unrebutted, to establish the fact.'" *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014), *aff'd*, 648 F. App'x 386 (5th Cir. 2015) (quoting *Pinto-Vidal v. Att'y Gen. of U.S.*, 680 F. Supp. 861, 862 (S.D. Tex. 1987)). The Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution does not require federal

courts to give preclusive effect to a determination by the Texas Department of Health and Human Services that a person was born in Texas. *See Sanchez v. Clinton*, No. CIV.A. H-11-2084, 2012 WL 208565, at *9 (S.D. Tex. Jan. 24, 2012), *aff'd sub nom. Sanchez v. Kerry*, 648 F. App'x 386 (5th Cir. 2015).

Baptismal certificates, medical records, and school records constitute evidence of an individual's birthplace, but courts consider such documents as "secondary evidence". *See, e.g.*, *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012).

As for testimony, courts weigh the credibility of witnesses, but receive a plaintiff's self-serving statements and those of interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871; *see also Garcia*, 915 F. Supp. 2d at 835; *Patel v. Rice*, 403 F. Supp. 2d 560, 565 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007).

**B. Application**

Applying the relevant standard and legal principles to the evidence admitted at trial, the Court concludes that Plaintiff Ruben Flores has established by a preponderance of the evidence that he was born in the United States.

The Court first considers Plaintiff's birth certificate, which represents prima facie evidence that he was born in Texas. *See* TEX. HEALTH & SAFETY CODE ANN. § 191.052. The United States can rebut this evidence, such as through a competing, foreign birth record. *See Sanchez*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 ("A contemporaneously filed foreign birth record creates a presumption of alienage and is almost conclusive evidence of birth in that country."). The trial record contains no such competing document. On the contrary, the civil registry in Tamaulipas, Mexico, provided a Record of Inexistence, confirming that its database contained no birth record matching Plaintiff's name and March 13, 1973, birth date. (Record of Inexistence (PX5), Doc. 45,

22–23) While not conclusive, the Mexican documentation lends weight to Plaintiff's argument that he was not born in Mexico.[1]

The Court also finds the testimony by Plaintiff's father and mother consistent and credible. While they represent interested witnesses, they provided similar testimony and presented a tenable version of the events on March 13, 1973. They explained why and how they crossed into the United States on that day, and corroborated each other's testimony regarding Vasquez unexpectedly going into labor and being taken to the midwife in Brownsville. On cross examination, the Government did not elicit testimony that cast doubt on the details of that day.

Plaintiff's parents also provided rational explanations for the documentary evidence that contradicts Plaintiff's version of the facts. Vasquez explained why she signed the statement at the U.S. consulate, in which she attested that she had given birth to Plaintiff in Mexico in 1972. She described a long day of travel and waiting for the interview, and then being pressured into signing a document that another person prepared and which she may not have fully understood. On cross examination, Vasquez conceded that she made representations to U.S. officials that directly contradict her testimony, but she remained firm in her position that she signed the statement under pressure and that it contained false information. Ultimately, the Court finds her testimony credible on this subject, concluding that the manner in which the consulate obtained the statement casts doubt on whether Vasquez voluntarily and knowingly signed the document.

In addition, secondary and circumstantial evidence supports the accuracy of Plaintiff's birth certificate and the testimony of his parents. His baptismal certificate records his birth date as March 13, 1973, and his birthplace as Brownsville, Texas. (Baptismal Cert. (PX6), Doc. 45, 25–26) Plaintiff's parents registered each of their children's birth, but they registered only Plaintiff's birth in Texas. Accepting the Government's theory would require finding that Plaintiff's parents had a midwife in Texas fraudulently file Plaintiff's birth certificate, but chose to not do so with any

---

[1] Plaintiff also signed a consent for the United States to request that the Mexican civil registry conduct a similar search using the alternative birth date of March 21, 1972. (Consent Form (PX12), Doc. 45, 55) The trial record does not disclose the results of such a search, or whether it even occurred.

of their other children, even though the motivations and opportunity to do so would have been substantively similar, at least with the children born in 1973 through 1976. The Court finds that the fact that Plaintiff's parents filed a Texas birth certificate for only one of their six children lends some weight to their testimony that he was the only one born in Texas.

The Government challenges Plaintiff's version of his birth by focusing on certain documents and calling into question Vasquez's credibility. As to the documentary record, the Government challenges the authenticity of the Texas birth certificate because the midwife who registered it later stated under oath that she had filed the document fraudulently. While the appearance of Plaintiff's name on the midwife's list certainly cuts against his claim, the Court attributes only slight weight to this evidence. As the midwife died in 1984, she could not testify at trial and was not subject to cross examination. In fact, aside from the typewritten answers in her statement, little is known about the creation of the ledgers and the identification of the fraudulent birth records. In her statement, she claims that she marked the false births on the ledgers with an "x", but she does not make clear when she did so. (*See* Statement of Guadalupe Gonzalez (DX3), Doc. 44, 14; Ledger Excerpt (DX3), Doc. 44, 17) If she identified the false births in 1983, it casts doubt on the accuracy of the list, as she was in her seventies at the time, and no evidence demonstrates the basis for her identification of the false births. Other documents forming part of the exhibit also list names, but these appear to have been created by U.S. officials based on the midwife's ledgers. (*See* INS List, Doc. 44, 24 (listing instances of "Identification of False Birth Certificates Created by Suspect (Retired) Midwife Guadalupe Gonzalez")) Moreover, the ledger excerpt includes the date 1983, strongly suggesting that the documents were prepared a decade after Plaintiff's birth. Overall, the midwife's statement, the related ledgers, and other documents represent only slight weight in opposition to Plaintiff's version of events.

The Government also highlights other documents that run counter to Plaintiff's claim. For example, in 1995, Plaintiff appeared as a witness for the registration of his brother, Antonio's birth. That document lists his age as 23, which would be consistent with Plaintiff being born in

1972 rather than 1973. (Antonio's Registration (PX10-5), Doc. 45, 46–47) Similarly, in his Supplemental Questionnaire to Determine Entitlement for a U.S. Passport, Plaintiff reports that he lived in Matamoros beginning in 1972. (Supp. Questionnaire (DX8), Doc. 44-1, 14) While these discrepancies raise questions about the year of Plaintiff's birth, they do not undermine the overall weight of the evidence indicating that Plaintiff was born in March 1973 in Brownsville. Plaintiff did not prepare the statements at issue in those documents. For example, a Mexican official typed and prepared the registry, and Plaintiff did not personally write the dates in the Supplemental Questionnaire. In fact, in a separate section of the questionnaire, Plaintiff's birth date is reflected as March 13, 1973, rendering the document internally inconsistent. (Supp. Questionnaire (DX8), Doc. 44-1, 12) Taking into account the circumstances surrounding the creation of these documents, and the overall trial record, the Court finds that these exhibits do not render it less probable than not that Plaintiff was born in Texas.

The Government also questioned Vasquez's credibility by noting that she used different names in different records, and by characterizing the alleged timing of Plaintiff's birth as dubious. On the first point, some documents identify Plaintiff's mother as "Emma Aurora", while other documents omit "Emma". (*Compare* Tex. Birth Cert. (PX1), Doc. 45, 3, *with* Vasquez Voter ID Card (DX7), Doc. 44-1, 6) Vasquez acknowledged that she registered in Mexico using "Emma Aurora Tovar Vasquez", but testified that she used only "Aurora" as her name. In closing argument, the Government highlighted these varying usages of her name as suspicious. The Court, however, finds that this evidence has minimal relevance to the issues in the lawsuit and does not undermine Vasquez's credibility. While it is apparent that Vasquez has used different names on different occasions, she does not appear to have done so in an attempt to obtain benefit or mislead a government agency or other individual. Rather, her use of different names appears to stem from the use of her formal name at times, and the use of her common name on other occasions.

As for the timing of Plaintiff's birth, both Vasquez and Flores testified that she began feeling discomfort and pain between 6 and 8 p.m., and then gave birth at 10 p.m. The midwife's ledger records Plaintiff's birth weight as twelve pounds and eight ounces. In closing argument, the Government raised skepticism about Vasquez giving birth so quickly, especially if the child weighed over twelve pounds. But no party presented evidence regarding the average length of labor, or whether Vasquez went into labor before she felt pain and discomfort. Ultimately, the Court finds that Vasquez and Flores presented a viable timeline for Plaintiff's birth.

Based on the entire trial record, the Court concludes that the preponderance of the evidence indicates that Vasquez gave birth to Plaintiff in Brownsville, Texas, on March 13, 1973.

### III.   Conclusion

Based on the Court's findings of fact and the applicable law, it is:

**ORDERED** that Plaintiff Ruben Flores's request for a declaratory judgment under 8 U.S.C. § 1503(a) is **GRANTED**.

The Court will separately issue a Final Declaratory Judgment in accordance with this Order and Opinion.

Signed on March 27, 2023.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge